RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 10 / 22 / 13

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| THOMAS ENERGY SERVICES, INC., D/B/A THOMAS TOOLS, ET AL | : | DOCKET NO. 6:13-0813 |
| VS. | : | JUDGE TRIMBLE |
| JAMES ROWELL, ET AL | : | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Before the court is "Defendant Premium Oilfield Services, LLC's Motion to Dismiss Pursuant to Fed. R.Civ. P. 12(b)(6)" (R. #10) wherein the mover seeks to dismiss the claims brought against it by plaintiffs, Thomas Energy Services, LLC d/b/a Thomas Tools ("Thomas") and Smith International, Inc. ("Smith") (sometimes referred to collectively as "Plaintiffs"). Premium Oilfield Services, LLC ("Premium") maintains that the Complaint, as amended, fails to state a cause of action upon which relief can be granted and moves to dismiss plaintiffs' claims for civil conspiracy and violation of the Louisiana Unfair Trade Practices Act ("LUTPA") against it.

## FACTUAL ALLEGATIONS

Plaintiffs make the following factual allegations in the complaint, as amended: Thomas is in the business of oilfield tool rental and oilfield services, including oil well fishing. Thomas is a wholly owned subsidiary of Smith International, Inc. ("Smith") and Smith is a wholly owned subsidiary of Schlumberger Technology Corporation. Defendant, James Rowell, was employed by Thomas for approximately 28 years; he was also the company's President. Pursuant to an employment agreement signed by Rowell on April 30, 2007, Rowell was prohibited from "directly or indirectly solicit[ing] for employment, or otherwise encourag[ing] the departure of, any employee of Thomas" during his

employment with Thomas and one year following the expiration of the agreement. The effective date of the three year employment agreement which was renewed for an additional two (2) years was January 1, 2007. Hence, it was set to expire on January 1, 2012.

Thomas submits that in late 2011, Rowell began discussions with Composite Energy Services ("CES"), a start-up company, to directly compete with Thomas. Further, in late 2011 or early 2012, Rowell and CES agreed to form a new company, Premium, that would compete directly with Thomas. Thomas asserts that Rowell is the president of Premium and further believes that he has a significant ownership interest in the new company.

Thomas complains that while he was still employed, Rowell solicited or encouraged Thomas employees to depart the company in violation of the employment agreement. Specifically, during 2012, Premium hired over 25 of Thomas' employees who were former subordinates of Rowell resulting in a loss of over half of Thomas' workforce at its Broussard, Louisiana location.

On January 16, 2012, Rowell submitted his notice of resignation to Thomas effective January 31, 2012. Rowell was immediately employed by Premium as its President; Plaintiffs allege that prior to his departure, Rowell accessed Plaintiffs' computers and downloaded and removed confidential electronic business records as part of a plan to competitively harm Plaintiffs and give Premium an unfair competitive advantage in the market place. Furthermore, Rowell has solicited and/or encouraged others to solicit Thomas employees to work for Premium in violation of the employment agreement.

Thomas further alleges that Rowell conspired with defendant, Joseph Crow, and/or defendant, Jimmy Tyrone, to commit unlawful acts against Plaintiffs, including Crow's breach of fiduciary duty to Thomas, the purpose of which was to obtain an unfair competitive advantage over Plaintiffs.

Joseph Crow was employed by Smith in its oilfield fishing division and was the Pipe Recovery District Manager for Smith. Crow submitted his notice of resignation on September 15, 2012 and was immediately hired by Premium. Plaintiffs complain that while he was still employed by Smith, Crow made plans and solicited or otherwise encouraged the departure of Smith employees to Premium and also solicited the departure of Plaintiffs' clients to Premium. Plaintiffs further complain that Crow conspired with Rowell and Tyrone to commit unlawful acts against Plaintiffs including breaching his fiduciary duty to Thomas. Specifically, Crow accessed Plaintiffs' computers and destroyed digital information as part of a plan to competitively harm Plaintiffs and give Premium an unfair competitive advantage in the marketplace. As a manager for Premium, Plaintiffs complain that Crow is currently using its unique technology to compete with Plaintiffs.

Defendant, Jimmy Tyrone, was also a long time Smith employee and Region Manager in its oilfield fishing division. Tyrone submitted his notice of resignation effective January 1, 2012 and was immediately hired by Premium. Plaintiffs believes that Tyrone has a significant equity ownership interest in Premium. Plaintiffs complain that while employed by Smith, Tyrone accessed Plaintiffs' computers and downloaded and removed confidential electronic business records as part of a plan to competitively harm Plaintiffs and give Premium an unfair competitive advantage in the marketplace. Furthermore, Plaintiffs allege that Tyrone conspired with Rowell and Crow and/or Premium to commit unlawful acts including using Crow to solicit employees away from Smith while Crow was a Smith manager.

Plaintiffs assert the following causes of actions against these defendants: (1) violation of the Computer Fraud Abuse Act,[1] (2) breach of contract, (3) breach of fiduciary duty, (4) violation of the

---

[1] 18 U.S.C. A. § 1030.

3

Louisiana Unfair Trade Practices and Consumer Practices Act,[2] and (5) conspiracy to breach Crow's fiduciary duty and violate Rowell's non-solicitation agreement.

## RULE 12(b)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint when it fails to state a claim upon which relief can be granted. The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that " 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' "[3] Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged.[4] The plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true.[5] In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts.[6] "In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations. . . ."[7] "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[8]

---

[2] La. R.S. 51:1401, et seq.

[3] Hitt v. City of Pasadena, 561 F.2d 606,608 (5th Cir. 1977)(per curium) citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, (1957).

[4] Elliot v. Foufas, 867 F.2d 877, 880 (5th Cir. 1989).

[5] Oppenheimer v. Prudential Securities, Inc., 94 F.3d 189, 194 (5th Cir. 1996).

[6] Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1137 (5th Cir. 1992).

[7] Guidry v. Bank of LaPlace, 954 F.2d 278, 281 (5th Cir. 1992).

[8] Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

"[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."[9]

Under Rule 8 of the Federal Rules of civil Procedure, the pleading standard does not require a complaint to contain "detailed factual allegations," but it demands "more than an unadorned, the defendant-unlawfully-harmed-me accusation."[10] A complaint that offers "labels and conclusions:" or "a formulaic recitation of the elements of a cause of action will not do."[11] Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."[12]

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[13]

## LAW AND ANALYSIS

Premium maintains that the complaint, as amended, fails to state a viable claim against it. In its motion, Premium seeks to dismiss plaintiffs' claims of conspiracy predicated upon Premium's actions in allegedly inducing Crow to breach a fiduciary duty and Rowell to breach a non-solicitation agreement. Premium argues that the contract-based claims are insufficient to state a conspiracy claim and that Louisiana law does not recognize a violation of LUTPA based on the theory that a corporate defendant, such as Premium, interfered with a contract to which it was not a party. Plaintiff also

---

[9] Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995).

[10] Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007).

[11] Id.

[12] Id., at 557, 127 S.Ct. 1955.

[13] Id., at 570, 127 S.Ct. 1955.

argues that Premium's conclusory allegations fall short of the pleading standards necessary to state a claim in federal court.

In their complaint, plaintiffs assert a claim of conspiracy against Premium, Rowell, Crow and Tyrone for violations of the Computer Fraud and Abuse Act ("CFAA")[14] and Louisiana's Unfair Trade Practices Act,("LUTPA")[15] and other forms of tortious conduct.

Louisiana Civil Code article 2324(A) provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." The underlying act for a claim for conspiracy under article 2324 must be tortious conduct.[16] Plaintiffs concede that a conspiracy claim premised on a breach of contractual obligations is not recognized under Louisiana law. Plaintiffs assert that its conspiracy claims against Premium are based on tortious conduct. Plaintiffs argue that Premium, through its agents and representatives (Rowell, Crow, and Tyrone), developed a plan to decimate Plaintiffs' workforce, take Plaintiffs' confidential and proprietary information and use that information to solicit Plaintiffs' customers and drive Plaintiffs from the Lafayette and other markets.

Thus, Plaintiffs contend that the allegations are sufficient to hold Premium liable as a co-conspirator with Rowell, Crow and Tyrone under both the CFAA and LUPTA. Plaintiffs remark that Louisiana courts have routinely held that anyone who conspires to injure a party's competitor is liable

---

[14] 18 U.S.C. § 1030.

[15] La.R.S. 51:1405, et seq.

[16] Louisiana v. Guidry, 489 F.3d 692, 706 (5th Cir. 2007); see also C&B Sales & Serv., Inc. v. McDonald, 95 F.3d 1308, 1316 (5th Cir. 1996).

*in solido* with that party under LUTPA.[17] Plaintiffs point to the following allegedly unlawful conduct: directly and indirectly soliciting employees in violation of the non-solicitation agreement, downloading and removing confidential proprietary information, encouraging the departure of Smith clients to Premium at Premium's direction, accessing Plaintiffs' computers to download and remove confidential electronic business records either at the direction of Premium or, alternatively, with Premium's knowledge and consent, accessing Plaintiffs' computers to destroy digital information that would competitively harm Plaintiffs and/or give Premium an unfair competitive advantage in the marketplace, and the use of Plaintiffs' technology to compete with Plaintiffs.

Premium argues that plaintiffs' claims that it conspired to induce Rowell's violation of his non-solicitation agreement and Crow's breach of fiduciary duties fail because neither of these allegations sound in tort. Premium further asserts that the complaint as amended fails to identify specific unfair or deceptive acts or practices in which Premium allegedly engaged, and that the amended complaint fails to allege the factual bases that an agency relationship existed.

Premium asserts that the unlawful actions by Rowell, Crow and Tyrone were prior to Premium coming to existence. Premium was formed on or about February 7, 2012 and registered to do business in Louisiana on or about February 15, 2012. Premium further complains that Plaintiffs' opposition alleges facts not contained in their amended complaint and requests that the court not consider these particular factual allegations. Hence, Premium contends that the complaint fails to allege sufficient facts as to Plaintiffs' LUTPA claims.

---

[17] Sandbagger Corp. v. City of Youngsville, 2009 U.S. Dist. LEXIS 75902 (W.D. La. Aug. 25, 2009). See also Risk Mgmt. Servs., LLC v. Moss, 40 So.3d 176, 184 (La.App. 5 Cir. 4/13/10); Camp, Dresser &McKee, Inc. v. Steimle and Assocs., Inc., 652 So.2d 44 (La.App. 5 Cir. 2/15/95); Strahan v. Louisiana, 645 So.2d 1162, 1165 (La.App. 1 Cir. 8/25/94); Roustabouts, Inc. v. Hamer, 447 So.2d 543 (La.App. 1 Cir. 1984).

Plaintiffs contend the while acting as owners/agents of Premium, Rowell, Crow and Tyrone engaged in a conspiracy which included unlawful activities to drive Plaintiffs out of the Lafayette market in order to gain a competitive advantage over Plaintiffs. In addition to the alleged unlawful activity previously mentioned, Plaintiffs remark that defendants (1) spread rumors about the dismantling of Smith and/or Thomas after the acquisition by Schlumberger, (2) directed or encouraged employees to access, remove and/or destroy Plaintiffs' confidential and proprietary business records prior to their departure, (3) used Plaintiffs' confidential and proprietary records to duplicate Plaintiffs' corporate infrastructure, (4) used Plaintiffs' confidential compensation and benefits information to raid Plaintiffs' employees with the offer of better salaries and bonuses, (5) used Plaintiffs' confidential and proprietary records to outbid Plaintiffs on jobs and steal their customers, (6) used Plaintiffs' proprietary equipment and methodology to perform work as a competitor, and (7) disparaged Plaintiffs to their customers by misrepresenting Plaintiffs' ability to perform work or provide competent services.

What constitutes unfair and/or deceptive practices is not specifically defined, but is determined on a case-by-case basis.[18] Acts which constitute unfair trade practices generally involve fraud, misrepresentation, deception, breach of fiduciary duty or other unethical conduct related to trade or commerce.[19]

Plaintiffs assert that they intend to amend their complaint as they learn new information about defendants' conduct and remark that the parties have agreed to a voluntary exchange of information which may lead to the discovery of additional evidence to support Plaintiffs' claims. The court agrees

---

[18] Heart's Desire, LLC v. Edwards, 66 So.3d 82 (La.App. 2d Cir. 4/27/11).

[19] Action Revenue Recovery, LLC v. eBusiness Group, LLC, 17 So.3d 999, 1004; Heart's Desire, 66 So.3d 82, *20; SDT Industries, Inc. v. Leeper, 793 So.2d 327 (La.App. 2d Cir.6/22/01), writ denied, 803 So.2d 973 (La. 12/7/01).

that any contractual based conspiracy claims against Premium, to the extent they are asserted in the complaint as amended, should be dismissed. However, due to the infancy of this case, the significance of the factual allegations in the opposition[20] and the ongoing discovery, the court believes that it would be improper at this juncture to dismiss any remaining claims against Premium in this lawsuit. While the court cannot consider the factual allegations which are notably not contained in the complaint but are set forth in the opposition to the motion to dismiss, said factual allegations could possibly supply any pleading deficiencies presently complained of by defendants.

## CONCLUSION

For the reasons set forth above, the motion to dismiss any contractual based conspiracy claims against Premium will be dismissed; otherwise the motion to dismiss will be denied. The court will grant Plaintiffs 90 days from the date of this order to conduct the discovery necessary and file a second amended complaint.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 22nd day of October, 2013.

```
                                    /s/ James T. Trimble
                                    _____
                                    JAMES T. TRIMBLE, JR.
                                    UNITED    STATES    DISTRICT    JUDGE
```

---

[20] Additional allegations made in their opposition are that: (1) when defendants left their employment, they took with them numerous flash drives and external drives which may have contained confidential and proprietary business documents (over thirty drive have been identified to date), (2) other employees also took flash drives and external drives which may have contained confidential and proprietary business documents.